**GIBSON, DUNN & CRUTCHER LLP**
Richard M. Cieri (admission *pro hac vice* pending)
Conor D. Reilly (CR-6559)
M. Natasha Labovitz (MNL-5153)
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Proposed Attorneys for the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                 :
In re                                                            : Chapter 11
                                                                 :
**SOLUTIA INC.,** *et al.*,                                      : Case No. 03-_____ (____)
                                                                 :
    Debtors.                                  : (Jointly Administered)
                                                                 :
-----------------------------------------------------------------x

## DEBTORS' APPLICATION FOR AN ORDER APPROVING THE EMPLOYMENT OF ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER

      Solutia Inc. ("Solutia") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), seek entry of an order approving the employment of Rothschild Inc. ("Rothschild") as their financial advisor and investment banker in these chapter 11 cases. In support of this Application, the Debtors rely on the Declaration of Jeffry N. Quinn in Support of Chapter 11 Petitions and Requests for First-Day Relief Pursuant to Local Bankruptcy Rule 1007-2 (the "Quinn Declaration"), which the Debtors filed concurrently with this Application, and the Declaration of Todd R. Snyder annexed hereto as Exhibit A (the "Snyder Declaration"). In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are sections 101, 327, 328 and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## GENERAL BACKGROUND

2. On the date hereof (the "Petition Date"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated. Concurrently with the filing of this Application, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases.

3. The Debtors and their wholly owned nondebtor foreign subsidiaries (collectively, the "Solutia Group") are a multinational corporate organization that manufactures and sells high-performance chemical-based materials for industrial and consumer use. Solutia, a publicly owned company, is the direct or indirect parent corporation of each of the other members of the Solutia Group. The Solutia Group is a world leader in the development and manufacture of three main product lines with diverse and worldwide applications. The Solutia Group's **performance films** are used in safety glass and after-market applications – Solutia's safety glass, for example, comprises a significant percentage of automobile windshields and windows in the Pentagon. The Solutia Group's specialty **chemical products** include water treatment chemicals, heat transfer

fluids and aviation hydraulic fluids.  As but one example of the wide range of applications of Solutia's chemical products, Solutia's Dequest® water treatment phosphonate is useful as an additive in shampoos and cosmetics, cleans swimming pools and can improve the performance of both oil wells and desalination plants around the world.  The Solutia Group's **nylon products** division is one of the world's few fully integrated producers of nylon 6,6, the fiber that made carpet more durable, softer, easier to clean and more affordable.  In addition to its well-known carpet brands, Solutia's nylon division produces fibers, plastics and high-performance polymers that touch consumers' lives every day in products from dental floss to carpets, and that form critical manufacturing components, including some components of the space shuttle.

4. As of the Petition Date, the Solutia Group operates 29 manufacturing plants worldwide – including 18 sites in North America, ten sites in Western Europe and one site in South America – and has sales offices, research laboratories and technical centers spanning the globe.  In these widespread operations, the Solutia Group's workforce is made up of approximately 6,350 employees and contractors, most of whom have extensive experience and cutting-edge technical expertise in the chemicals business, and all of whom perform functions critical to the Solutia Group's overall business operations.

5. For the nine months ended September 30, 2003, the Solutia Group's consolidated net sales were approximately $1.8 billion, following on consolidated net sales for 2002 of approximately $2.2 billion.  As of September, 30, 2003, the Solutia Group had approximately $2.9 billion in assets and $3.2 billion in liabilities on a consolidated basis.

6. The Debtors believe that these chapter 11 cases will allow the Solutia Group to, among other things, shed the liabilities of the Monsanto Company chemical business imposed on them at their creation, restructure their balance sheets by reducing indebtedness to sustainable

levels so that they can focus on their core operations – most of which historically have been high-growth, high-margin businesses – and streamline operations so that they emerge from chapter 11 as stronger, healthier companies.

## THE DEBTORS' RETENTION OF ROTHSCHILD AS FINANCIAL ADVISOR AND INVESTMENT BANKER

**A.     Qualifications of Rothschild**

7.     Rothschild is a member of one of the world's leading independent investment banking groups, with expertise in domestic and cross border mergers and acquisitions, restructurings, privatization advice and other financial advisory services, and with particular experience in providing high-quality financial advisory services to financially troubled companies. Rothschild, a member of the National Association of Securities Dealers and the Securities Investor Protection Corporation, is a private firm with approximately 250 employees in the United States and maintains offices in New York and Washington, D.C. Rothschild is highly qualified to advise on strategic alternatives, and its professionals have extensive experience in deals involving complex financial and operating restructurings.

8.     In particular, Rothschild and its current professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases. Rothschild's business reorganization professionals have served as financial and strategic advisors for debtors, creditors and other constituents in numerous chapter 11 cases, including, among others, Barney's, Inc., Bedford Fair Industries, Comdisco, Inc., Crown Vantage, Inc., Edison Brothers Stores, Inc., Federal-Mogul Global, Inc., Geneva Steel Company, Globe Manufacturing, Guilford Mills, Inc., Heartland Steel, HomePlace, Inc., James River Coal Company, Key Plastics LLC, La Roche Industries, Inc., Leiner Health Products, Inc., MicroCell Communications, Inc., Mpower Holdings Corp.,

Pacific Gas & Electric Company, Service Merchandise Corp., Superior Telecom Inc., The FINOVA Group Inc., Thermadyne Holdings Corp., Thorn Apple Valley, Inc., Trans World Airlines, Today's Man, Inc., UAL Corporation, Viasystems Group, Inc., Wilcox & Gibbs, Inc. and Zenith Electronics, Inc.

9. Since July 12, 2002, Rothschild has provided services to the Debtors in connection with their restructuring efforts. Rothschild was initially retained to assist and advise the Debtors in evaluating strategic alternatives and their implementation pursuant to the terms of a letter agreement dated July 12, 2002. By letter agreement dated April 1, 2003, as amended by the Amendment Agreement dated as of October 1, 2003, (collectively, the "Engagement Letter"), a copy of which is annexed to the Snyder Declaration as Schedule 1, the Debtors amended and restated the terms of Rothschild's engagement.

10. In providing professional services to the Debtors, Rothschild has worked closely with the Debtors' management and has become well-acquainted with the Debtors' businesses, capital structure, financial affairs and related matters. In particular, Rothschild played a significant role in the refinancing of the Debtors' then-existing bank facility in October, 2003, the prepetition negotiation of the Debtors' proposed debtor in possession financing facility and prepetition negotiations with the Debtors' bondholders and the holders of bonds issued by the Debtors' affiliate, Solutia Europe SA/NV. As a result, Rothschild's prior engagement is significantly connected with the challenges that will face the Debtors in their chapter 11 restructuring, such that the experience Rothschild gained before the Petition Date will facilitate their provision of the services required by the Debtors in these chapter 11 cases.

**B.     Scope of services to be provided**

11.     The Debtors anticipate that Rothschild will render financial advisory services to the Debtors as needed throughout these chapter 11 cases. In accordance with the terms of the Engagement Letter, the Debtors anticipate that Rothschild will perform, among others, the following services:

>    (a)     to the extent deemed desirable by the Debtors, identify and/or initiate potential "Transactions"[1] or other transactions;

---

[1] As used in the Engagement Letter, the term "Transaction" means, collectively: (a) any transaction or series of transactions that effects material amendments to or other material changes in any of the Debtors' outstanding indebtedness, trade claims, leases (both on and off balance sheet) and other liabilities including, without limitation, pursuant to a plan of reorganization (a "Plan") under the Bankruptcy Code; (b) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Debtors (or control thereof) are acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), whether in a single transaction, multiple transactions or a series of transactions, of (A) other than in the ordinary course of business, all or substantially all of the assets or operations of the Debtors or (B) any outstanding or newly-issued shares of the Debtors' capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Debtors, for the purpose of effecting a recapitalization or change of control of the Debtors; (c) any restructuring, reorganization or similar transaction, whether or not pursuant to a Plan; or (d) any transaction similar to any of the foregoing, in each case as to which Rothschild provided services under the Engagement Letter; *provided*, that the term Transaction shall not include any sale of assets or businesses (including any directly related debt reduction or pay down or extension) with respect to which Rothschild has not been specifically requested by the Debtors to render services and, *provided further*, that none of the following transactions, taken individually, shall be deemed to be a Transaction, it being understood that any of the following transactions or any combination of the following transactions may form a component of a Transaction, and may be effected by or in connection with a Transaction: (i) any changes with regard to the 6.25% 2005 Euro Notes issued by Solutia Europe S.A. which are effected by a meeting or consent of the holders of Euro Notes, (ii) any changes to the Debtors' liability for indebtedness of Astaris, (iii) any change in the secured or unsecured status of any of the Debtors' indebtedness as a result of the applications of "equal and ratable" lien clauses in documents governing such indebtedness, (iv) any waivers of defaults or agreements to forebear entered into by holders of indebtedness of the Debtors, (v) individually negotiated changes to the terms of trade

[Footnote continued on next page]

(b) to the extent Rothschild deems necessary, appropriate and feasible, or as the Debtors may request, review and analyze the Debtors' assets and the operating and financial strategies of the Debtors;

(c) review and analyze the business plans and financial projections prepared by the Debtors including, but not limited to, testing assumptions and comparing those assumptions to historical trends of the Debtors and industry trends;

(d) evaluate the Debtors' debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Debtors;

(e) assist the Debtors and their other professionals in reviewing the terms of any proposed Transaction or other transaction; in responding thereto and, if directed, in evaluating alternative proposals for a Transaction or other transaction, whether in connection with a Plan (as defined above) or otherwise;

(f) determine a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction or other transaction;

(g) advise the Debtors on the risks and benefits of considering a Transaction or other transaction with respect to the Debtors' intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Debtors, whether pursuant to a Plan or otherwise;

(h) review and analyze any proposals the Debtors receive from third parties in connection with a Transaction or other transaction, including any proposals for debtor in possession financing, as appropriate;

(i) assist or participate in negotiations with the parties in interest, including any current or prospective creditors of, holders of equity in, or claimants against the Debtors and/or their respective representatives in connection with a Transaction or other transaction;

(j) advise and attend meetings of the Debtors' Boards of Directors, creditor groups, official constituencies and other interested parties, as requested;

(k) if requested by the Debtors, participate in hearings before the Court and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan; and

---

[Footnote continued from previous page]
claims against the Debtors or leases or other contracts to which the Debtors are parties, (vi) any waiver of the put provisions by the holders of the Debtors' 6.72% 2037 bonds or (vii) any raise of capital which (a) gives rise to a New Capital Fee (as defined herein) or (b) does not effect a recapitalization of the Debtors.

7

(l) render such other financial advisory and investment banking services as are customarily provided or may be agreed upon by Rothschild and the Debtors in connection with any of the foregoing.

12. The Debtors require knowledgeable financial advisors to render these essential professional services. Rothschild's experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities, will inure to the benefit of the Debtors in providing an enterprise valuation of the Debtors and in pursuing any Transactions. Moreover, Rothschild has obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing services to the Debtors prior to the Petition Date. The Debtors submit that Rothschild is both well qualified and uniquely able to perform these services and assist the Debtors in these chapter 11 cases.

13. All of the services that Rothschild will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in the case, including Kroll Zolfo Cooper LLC, the Debtors proposed restructuring advisors and bankruptcy consultants. Specifically, to ensure against duplication of services among its professionals, the Debtors' chief restructuring officer will review all assignments to its professionals and monitor the services provided by each such professional.

## C. Terms of Engagement Letter

14. As more fully described in the Engagement Letter, and subject to the Court's approval, the Debtors have agreed to pay the following compensation to Rothschild in consideration of the services to be performed in these chapter 11 cases:

(a) A monthly cash advisory fee (the "Monthly Fee") of $200,000 per month, whether or not a Transaction is proposed or consummated. The Monthly Fee shall be payable by the Debtors in advance on the first day of each month;

(b) A "Completion Fee" of $6,750,000 payable in cash upon the earlier of (A) the confirmation and effectiveness of a Plan or (B) the closing of another Transaction; provided, that Rothschild shall credit against the Completion Fee: (X) 50% of the Monthly Fees paid in excess of $600,000, which credit shall not exceed $3,000,000; (Y) 30% of any New Capital Fees (defined below) paid; and (Z) to the extent not otherwise applied against the fees and expenses of Rothschild under the terms of the Engagement Letter, the Retainer; provided that the sum of such credits shall not exceed the Completion Fee;

(c) A "New Capital Fee" if Rothschild is specifically requested by the Debtors, in writing, to provide relevant services with regard to raising of capital for the Debtors, at the closing of any such capital raise, Rothschild shall be paid a New Capital Fee as follows: (a) $5,000,000 upon the closing of a senior secured debt facility, *provided* that Rothschild shall be entitled to receive only one fee under this clause (a) during the term of its engagement hereunder; (b) 3% of the face amount of any junior secured or senior or subordinated unsecured debt; and (c) 6% of any equity or hybrid capital raised which does not result in a recapitalization or change in control of the Debtors; and

(d) To the extent the Debtors request Rothschild to perform additional services not contemplated by the Engagement Letter, such additional fees as shall be mutually agreed upon by Rothschild and the Debtors, in writing, in advance.

15. Additionally, the Debtors have agreed to reimburse Rothschild for its reasonable expenses incurred in connection with the provision of services, including the fees, disbursements and other charges of Rothschild's counsel. Reimbursable expenses also shall include travel and lodging, data processing and communications charges, research and courier services.

16. The Debtors understand that Rothschild intends to apply to the Court for allowance of compensation and reimbursement of expenses for financial advisory and investment banking services in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), as those procedures may be modified or supplemented by order of this Court. Consistent with its ordinary practice and the practice of financial advisors in other

9

chapter 11 cases whose fee arrangements are typically not hours-based, Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals. The Debtors therefore request that Rothschild be excused from compliance with such requirements and that Rothschild be required only to maintain its time records in one-hour increments.

17. To the best of the Debtors' knowledge, the compensation arrangement described above is consistent with and typical of arrangements entered into by Rothschild and other investment banking and financial advisory firms with respect to rendering similar services for clients such as the Debtors.

**D.     Prepetition payments to Rothschild**

18. During the one-year period preceding the Petition Date, the Debtors paid Rothschild approximately $6,984,300.26 in respect of services rendered pursuant to the Engagement Letter and expenses incurred in relation thereto (the "Prepetition Payments"). Additionally, pursuant to, and upon the execution of, the April 1, 2003 engagement letter, the Debtors provided Rothschild with a $400,000 retainer to be applied against the fees and expenses of Rothschild thereunder. In connection with the amendment to the Engagement Letter dated as of October 1, 2003, and in consideration thereof, the Debtors agreed to increase Rothschild's retainer to an aggregate of $750,000 (such aggregate amount, the "Retainer").

19. Rothschild has not applied any portion of the Retainer toward fees accrued or reimbursement of expenses incurred prior to the Petition Date. The balance of the Retainer as of the Petition Date is $750,000. To the best of the Debtors' knowledge, the Debtors do not owe

any amounts to Rothschild on account of its prepetition fees and expenses.[2] A schedule identifying the Debtors' payment of the Retainer and Prepetition Payments is set forth below.

| Date of Invoice | Date of Payment | Fee Paid | Expenses Paid | Check No. / Wire Transfer |
|---|---|---|---|---|
| 4/11/03 (Retainer) | 4/11/03 | $400,000 | | Wire |
| 5/21/03 | 5/27/03 | $400,000 | $13,904.51 | Wire |
| 6/5/03 | 6/12/03 | $200,000 | $12,097.42 | Wire |
| 7/18/03 | 7/22/03 | $200,000 | $30,253.55 | Wire |
| 8/25/03 | 8/28/03 | $200,000 | $11,155.07 | Wire |
| 9/29/03 | 10/7/03 | $400,000 | $49,237.39 | Wire |
| 10/7/03 (New Capital Fee) | 10/9/03 | $5,000,000 | $21,802.80 | Wire |
| 11/7/03 | 11/10/03 | $200,000 | $7,308.07 | Wire |
| 12/5/03 | 12/8/03 | $200,000 | $13,541.45 | Wire |
| 12/9/03 (Retainer) | 12/10/03 | $350,000 | | Wire |
| Final Payment[3] | (anticipated) | | $25,000.00 | |
| | **Total:** | **$7,550,000** | **$184,300.26** | |

**E.     Indemnification**

20.     As more fully described in the Engagement Letter, and subject to certain modifications requested by the United States Trustee, which are reflected in the attached orders,

---

[2] In the event that Rothschild determines that any amounts are owed to it in respect to services rendered and expenses incurred prior to the Petition Date, and subject to any necessary approvals of this Court, Rothschild intends to apply the Retainer to unpaid prepetition fees and expenses. After application of the Retainer to outstanding prepetition fees and expenses, if any, Rothschild will hold the remainder of the Retainer and will not apply any portion of such funds to its fees and expenses incurred after the Petition Date, except pursuant to an order of this Court.

[3] The Debtors anticipate paying Rothschild the $25,000 Final Payment prior to the Petition Date.

if the Application is granted, the Debtors will indemnify and hold Rothschild harmless against liabilities arising out of or in connection with its retention by the Debtors except for any such liability for losses, claims, damages or liabilities incurred by the Debtors that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct of Rothschild.

**F.      Rothschild's disinterestedness**

21.     To the best of the Debtors' knowledge, information and belief, other than in connection with these cases, Rothschild has no connection with the Debtors, their creditors or any other party in interest, or their respective attorneys and accountants, except that Rothschild is connected with the Debtors by virtue of Rothschild's prepetition work for the Debtors, Rothschild may represent or has represented certain of the Debtors' creditors or other parties in interest in matters unrelated to these chapter 11 cases, and Rothschild has certain other connections with parties in interest that do not result in Rothschild holding or representing an interest adverse to the Debtors or their estates in connection with these chapter 11 cases.[4]  The Debtors do not owe Rothschild any amount for services performed prior to the Petition Date. Based upon the information available to them, the Debtors believe that Rothschild is a "disinterested person," pursuant to sections 101(14) and 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

---

[4] The Debtors' knowledge, information and belief regarding the matters set forth herein are based on, and made in reliance upon, the Snyder Declaration.  More detailed information regarding Rothschild's connections with parties in interest in these chapter 11 cases is included in the Snyder Declaration.

12

## RELIEF REQUESTED

22. By this Application, the Debtors seek entry of an order, pursuant to sections 327 and 328 of the Bankruptcy Code, approving the employment of Rothschild as their financial advisor and investment banker in these chapter 11 cases, effective as of the Petition Date and subject to the terms and conditions in the Engagement Letter.

## BASIS FOR RELIEF REQUESTED

**A.  Rothschild meets Bankruptcy Code requirements for retention.**

23. Section 327(a) of the Bankruptcy Code provides that a debtor in possession may, with the court's approval, employ professionals that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as defined by section 101(14) of the Bankruptcy Code, to represent or assist the debtor in possession in carrying out its duties under the Bankruptcy Code. *See* 11 U.S.C. §§ 101(14) & 327(a); *see also In re Granite Partners, L.P.*, 219 B.R. 22, 32 (Bankr. S.D.N.Y. 1998). Further, section 1107(b) of the Bankruptcy Code provides that a person is not disqualified for employment by a chapter 11 debtor in possession under section 327(a) of the Bankruptcy Code solely because of such person's employment by or representation of the debtor before the commencement of the case. *See* 11 U.S.C. § 1107(b).

24. As stated above, the Debtors believe that Rothschild does not hold or represent an interest adverse to the Debtors' estates and is a "disinterested person" under the Bankruptcy Code. The Debtors submit that Rothschild, therefore, is eligible to be employed by the Debtors in connection with these chapter 11 cases.

**B.  The proposed terms of retention are reasonable.**

25. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person

under section 327 . . . on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

26. Congress intended section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). *See also Donaldson, Lufkin & Jenrette Sec. Corp. v. National Gypsum Co. (In re National Gypsum Co.)*, 123 F.3d 861, 862-63 (5th Cir. 1997) ("[i]f the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

27. The Debtors believe that the fee structure and other terms and conditions in the Engagement Letter, including the indemnification provision, are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The fee structure appropriately reflects (a) the nature of the services to be provided by Rothschild and (b) the fee structures typically utilized by Rothschild and other leading financial advisory and investment banking firms. In particular, the Debtors believe that the proposed fee structure creates a proper balance between fixed monthly fees and contingency fees based on a successful restructuring.

28. The Debtors submit that the terms and conditions of Rothschild's employment in these cases are reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Rothschild's substantial investment banking and financial advisory experience and (d) the nature and scope of work

already performed by Rothschild prior to the Petition Date and to be performed by Rothschild in these chapter 11 cases. The Debtors believe that Rothschild is qualified to act as financial advisor and investment banker for the Debtors, that the terms and conditions of Rothschild's retention and employment are reasonable and, therefore, should be authorized and approved by this Court.

## INTERIM APPROVAL OF MONTHLY FEES AND EXPENSES

29. At the request of the United States Trustee, the Debtors will provide 45 days notice of the hearing to approve this Application to all known creditors in these chapter 11 cases. Such notice, substantially in the form attached hereto as Exhibit B (the "Notice of Application"), will be served within five days of the entry of an interim order and will include a description of the material terms of the compensation structure and the indemnification provisions sought by this Application. Pending the final hearing on this Application, the Debtors respectfully request that this Court enter the attached Interim Order authorizing the retention and employment of Rothschild during the interim period, approving the Monthly Fees during such period and approving the reimbursement of Rothschild's expenses during such period.

## WAIVER OF MEMORANDUM OF LAW

30. This Application includes citations to the applicable authorities and does not raise any novel issues of law. Accordingly, the Debtors respectfully request that the Court waive the requirement contained in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be submitted.

## NOTICE

31. Notice of this Application will be given to (a) the United States Trustee for the Southern District of New York, (b) the Debtors' 50 largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions, (c) counsel to the agents for the Debtors'

prepetition and proposed postpetition secured bank lenders, (d) the indenture trustee or fiscal agent for each of the public debt securities issued by the Debtors or their affiliates, (e) counsel to the unofficial prepetition committees representing certain bondholders of the Debtors or their affiliates, (f) Pharmacia Corporation, (g) Monsanto Company, (h) the Securities and Exchange Commission, (i) the Internal Revenue Service and (j) counsel to Rothschild.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice need be given and that the notice provided by the Debtors is sufficient

## NO PRIOR REQUEST

32. No prior application for the relief sought in this Application has been made to this or any other court in connection with these chapter 11 cases.

**WHEREFORE,** the Debtors respectfully request that the Court (a) enter an interim order, substantially in the form annexed hereto as Exhibit C, (i) approving the Notice of Application to be sent to all known creditors and (ii) approving the employment of Rothschild as the Debtors' financial advisor and investment banker on an interim basis effective as of the Petition Date pending approval of a final order substantially in the form annexed hereto as Exhibit D and (b) grant such other and further relief as the Court may deem just and proper.

Dated: December 17, 2003

Respectfully submitted,

SOLUTIA BUSINESS ENTERPRISES INC.
SOLUTIA INC.,
SOLUTIA SYSTEMS, INC.,
SOLUTIA OVERSEAS, INC.,
CPFILMS INC.,
SOLUTIA MANAGEMENT COMPANY, INC.,
MONCHEM INTERNATIONAL, INC.,
AXIO RESEARCH CORPORATION,
SOLUTIA INVESTMENTS, LLC,
BEAMER ROAD MANAGEMENT COMPANY,
MONCHEM, INC.,
SOLUTIA INTER-AMERICA, INC.,
SOLUTIA INTERNATIONAL HOLDING, LLC.,
SOLUTIA TAIWAN, INC. and
SOLUTIA GREATER CHINA, INC.

By: /s/ Jeffry N. Quinn
    Jeffry N. Quinn
    Senior Vice President, General Counsel and Chief
    Restructuring Officer of Solutia and an authorized
    officer of each of the other Debtors