UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re SOLUTIA INC., et al.,                                 Chapter 11
                                                            Case No. 03-17949(PCB)


          Debtors.

-----------------------------------------------------------x

LAW OFFICES OF DOUGLAS T. TABACHNIK, P.C.
Woodhull House
63 West Main St., Suite C.
Freehold, New Jersey 07728-2141
By Douglas T. Tabachnik, Esq.

-and-

STUTZMAN, BROMBERG, ESSERG, ESSERMAN & PLAFKA,
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
By Sander L. Esserman
Andrea L. Niedermeyer

ATTORNEYS FOR THE CALWELL PRACTICE,  PPLC AND
JAMES F. HUMPHREYS & ASSOCIATES, LC

-and-

Stuart Calwell
THE CALWELL PRACTICE, PLLC
90 Broad Street 19th Floor
New York, NY 10004

-and-

THE CALWELL PRACTICE, PLLC
Law and Arts Center West
500 Randolph Street
Charleston, West Virginia 25302


-1-

-and-

James F. Humphreys
JAMES F. HUMPHREYS & ASSOCIATES, LC
United Center, Suite 800
500 Virginia Street East
Charleston, West Virginia 25301

ATTORNEYS FOR THE NITRO, WEST VIRGINIA TORT CLAIMANTS


KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
By: Richard M. Cieri, Esq.
Jonathan S. Henes, Esq.

ATTORNEYS FOR THE DEBTORS AND REORGANIZED DEBTORS

WITH COPY TO

Rosemary S. Klein, Esq.
General Counsel
Solutia Inc,
575 Maryville Centre Dr.
St. Louis, Missouri 63141


Memorandum Decision on Fee Application of Nitro, West Virginia Tort Claimants[1]

The Nitro, West Virginia Tort Claimants  (the "Nitro Claimants")  filed an application

(the "Application")(see Docket No. 4691) for payment of reasonable fees and expenses in the

amount of $267,745.30 in fees and expenses of $14,026.05  pursuant to Section 503(b) of the

Bankruptcy Code ("Code") on the grounds that they made a substantial contribution to these

_____

[1] The Nitro, West Virginia Tort Claimants assert claims for personal injury or property
damage related to the chemical dioxin formerly produced at a plant located in Nitro, West
Virginia now owned by the Debtor but previously owned by the Monsanto Company.

cases. The amount sought is only part of the total fees and expenses incurred by the Nitro

Claimants during the pendency of these cases which were $398,691.88.[2]

The Debtors have objected to the application and have asserted that no substantial

contribution within the meaning of Code §503(b) was made by the Nitro Claimants (see Docket

No. 4738). They have not, however, argued that the time spent or fees sought were otherwise

excessive. The Claimants filed a reply (see Docket No. 4744 ).

For the reasons which follow, this court concludes that the Nitro Claimants did make a

substantial contribution to these cases within the meaning of Code §503(b) in connection with

the drafting of the disclosure statement and the plan for which compensation should be allowed.

Therefore, this court grants the Application  in the amount requested.

These Chapter 11 cases were mega cases with mega problems. The Solutia companies

had been created by a spin-off from Monsanto Chemical in 1997.  It was clear from the outset of

the Chapter 11 filings that any plan would have to deal with the Debtors' inherited liabilities for

environmental damage and personal injuries due to exposure to various chemical products.

While the Debtors filed a plan and disclosure statement early in the history of these cases,

it was not until the summer of 2007 that the Debtors were prepared to move forward towards

approval of the disclosure statement and confirmation.  The initial hearing on the amended

disclosure statement was fixed for July 10, 2007.

---

[2] The amount of the Application is modest by comparison to the fees otherwise awarded in this case.  For example, Kirkland & Ellis counsel to the debtors in possession were awarded $13,350,048 in fees and expenses of $753,516.73 for the period June 1, 2007 through December 28, 2007.  In total, Kirkland & Ellis were awarded fees in excess of $57,000,000 in these Chapter 11 cases although they were successor counsel and prior counsel received a significant fee award.

Prior to that date, the Nitro Claimants filed a written objection to the disclosure statement

and the proposed solicitation procedures.  See Docket No. 4003.  A number of other parties in

interest also filed objections.

The initial hearing on July 10 made clear to the court that a number of changes to the

plan and disclosure statement would be needed  before any disclosure statement could be

approved.  In so far they related to the Nitro Claimants, the changes were not merely cosmetic.

The disclosure statement and plan as then drafted basically incorporated by reference key

definitions and concepts from the original spinoff agreements that created Solutia in 1997.[3]

However, the definitions themselves were not included and their complex interrelationships were

not explained.

It was obvious to the court that the incorporation-by-reference drafting method utilized

by the Debtors was inadequate to deal with the treatment to be accorded the Nitro Claimants and

other tort claimants under the Plan since the incorporated documents were not attached to the

plan or disclosure statement nor to be found elsewhere in the case file.   Among other things, the

lack of clarity in the Plan meant there was a substantial risk that in any non-bankruptcy forum

the Plan would be misconstrued.

The Application details at length in paragraphs 12 through 19 what the problems were

with the way the plan was initially drafted as well as the ultimate solutions arrived at to correct

the problems.  The court incorporates these paragraphs from the Application by reference.  The

issues raised by the Nitro Claimants were ones that affected the holders of all of the thousands of

tort claimants, including non-Nitro tort claimants.   Moreover since the plan provided for tort

---

[3] Familiarity with the materials in the court's files on the spinoff is presumed.

claims to "ride" through unaffected, it was essential to the future stakeholders in the Debtors,

including creditors and public shareholders, that all tort claimants' rights against the Debtors,

Monsanto and Pharmacia be clearly specified. Debtors' counsel was resistant to any suggestion

by the Court that the plan needed to be redrafted.

This court finally approved the Debtors' <u>fifth</u> amended disclosure statement on October

15, 2007 after a number of changes were made to the plan and disclosure statement.  (The plan

was complex and there were 12 voting classes.)  Thereafter and after almost 4 years in the

bankruptcy court, the Debtors' <u>third</u> <u>amended  plan </u>was confirmed on November 29 , 2007. See

Document No. 4444.  However, the effective date of the plan was subject to the post-

confirmation closing of a pre-confirmation funding agreement.  Only after a three-day

emergency trial occurred in early February 2008 and after an expedited hearing on a settlement

was the funding forthcoming.  The plan then finally became effective.

The Claimants seek to recover for the legal services they expended during the period

immediately prior to the July 10 hearing through confirmation.   It is their position, and one with

which the court agrees, that the Debtors did not effectuate through their initial drafts what they

stated their intended treatment of so-called legacy to be.   Whether it was because the Debtors

thought they had but had not or because the Debtors were being influenced by Monsanto, the

original drafting was inadequate.  But for the insistence of the Claimants the so-called "pass-

through" sections would have remained ambiguous.

An award of compensation under Code §503(b) is the exception rather than the norm.  It

has been stated that

> "Compensation based on substantial contribution is designed to promote meaningful
> participation in the reorganization process, but at the same time, discourage

mushrooming administrative expenses. * * * Accordingly, the substantial contribution provisions must be narrowly construed * * * and do not change the basic rule that the attorney must look to his own client for payment. * * *

"Extensive participation alone is insufficient to justify an award. * * * Rather, compensation is limited to those extraordinary actions * * * that lead to an 'actual and demonstrable benefit to the debtor's estate, the creditors, and the extent relevant, the stockholders.' * * * Compensable services foster and enhance-rather than retard and interrupt-the progress of reorganization. * * *

"Conversely, insubstantial services include those that do no actually increase the size of the estate * * * or deplete the assets of the estate of the without providing any corresponding benefit. * * * Services that duplicate those rendered by the debtor or other court appointed officers, absent proof that they are unwilling or unable to act, are not compensable because they entail an excessive and undue burden on the estate. * * * A court may also consider whether the applicant's noncompensable activities increased the administrative costs to the estate. * * * Finally, services calculated primarily to benefit the client do not justify an award even if they also confer an indirect benefit. * * *"

In re Granite Partners, L P. et al,, 213 B.R. 440, 445-6 (Bankr. S.D.N.Y. 1997) (internal citations omitted).

The services rendered by the Nitro Claimants' attorneys were ones that the Debtors attorneys were unwilling to perform. They did not unnecessarily enlarge the administrative expenses in these cases. The clarifications to the plan that resulted produced an actual benefit to the Debtors, the creditors and to stockholders. The progress of this lengthy case was not interrupted but rather it was fostered and enhanced by the efforts of the Nitro Claimants with respect to the plan and disclosure statement. Even though resolving the ambiguity was in the best interest of the Claimants, it also conferred a benefit on all creditors by removing the necessity of litigating post-petition over what the plan meant. Creditors received, inter alia, stock in new Solutia under the plan. Thus, creditors had an ongoing interest in the post-confirmation welfare of Solutia, which included a interest in knowing the scope of its future liabilities. While the

absolute amount sought in the Application is not insubstantial, the amount is trivial in terms of the

fees already awarded in this case.

     For the forgoing reasons, this court grants the Application of the Nitro Claimants. The

previously submitted order has been signed.

Dated: New York, New York
      March 23, 2009

                              /s/ Prudence Carter Beatty
                              _____
                                U.S. Bankruptcy Judge